JEMMA E. DUNN
Nevada Bar No. 16229
  *JDunn@GGTrialLaw.com*
KARSON D. BRIGHT
Nevada Bar No. 14837
  *KBright@GGTrialLaw.com*
GREENBERG GROSS LLP
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Telephone: (702) 777-0888
Facsimile: (702) 777-0801

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| I.W., C.W., L.W., minors, by and through their legal guardians, J.W. and S.W., <br><br> Plaintiffs, <br><br> v. <br><br> CLARK COUNTY SCHOOL DISTRICT, JESUS F. JARA, an individual; KRISTY MUFFOLETTO, an individual; DINA MEYER, an individual; LORI CLARK; an individual; GREGORY SEVERTS, an individual; DOES I through X, inclusive; and ROE BUSINESS ENTITIES XI through XX, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br> **AND** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs J.W. and S.W. as legal guardians for I.W., C.W., and L.W., by and through the law firm of Greenberg Gross LLP, in support of their Complaint against the Defendants stated and named herein, complain and allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff J.W. is and was at all relevant times herein, a resident of Las Vegas, Nevada, and she is the legal guardian of minors I.W. (age 9), C.W. (age 7), and L.W. (age 11).

2. Plaintiff S.W. is and was at all relevant times herein, a resident of Las Vegas, Nevada,

and he is the legal guardian of minors I.W. (age 9), C.W. (age 7), and L.W. (age 11).

3. Plaintiff I.W. is and was at all relevant times herein, a resident of Las Vegas, Nevada, currently residing under the care and custody of Plaintiffs J.W. and S.W.

4. Plaintiff C.W. is and was at all relevant times herein, a resident of Las Vegas, Nevada, currently residing under the care and custody of Plaintiffs J.W. and S.W.

5. Plaintiff L.W. is and was at all relevant times herein, a resident of Las Vegas, Nevada, currently residing under the care and custody of Plaintiffs J.W. and S.W.

6. Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") at all relevant times mentioned herein was and is a political subdivision of the State of Nevada having its principal place of business in Clark County, Nevada.  CCSD purposely conducts substantial educational business activities in the State of Nevada, and was the primary entity owning, operating, and controlling Scherkenbach Elementary School ("SES") and the activities and behavior of their staff, employees, and students. On information and belief, CCSD is responsible for the actions and inactions and the policies, procedures, and practices/customs of the district. CCSD had the power to establish, implement, and enforce district-wide policies concerning employee supervision, background screening, surveillance monitoring, and response to allegations of staff sexual misconduct against students.

7. At all times relevant herein, Defendant JESUS F. JARA (hereinafter "Jara"), was an individual employed as a superintendent of CCSD with final policymaking authority over the district's operations, personnel, student safety protocols, and response to reports of employee misconduct. At all times relevant to this lawsuit, Jara was acting under color of law and had supervisory authority over the school's operations, staff, and student safety protocols. On information and belief, Jara's authority as superintendent included the power to establish, implement, and enforce district-wide policies concerning employee supervision, background screening, surveillance monitoring, and response to allegations of staff sexual misconduct against students. Jara had actual knowledge of systemic patterns of sexual abuse by CCSD employees and deliberately chose not to implement adequate policies or take corrective action to protect students like Plaintiff.

8. At all times relevant herein, Defendant KRISTY MUFFOLETTO (hereinafter "Muffoletto") was employed as the Principal of SES during the 2023-2024 and 2024-2025 school years. At all times relevant to this lawsuit, Muffoletto was acting under color of law and had supervisory authority over the school's operations, staff, and student safety protocols. Muffoletto received direct reports from parents regarding sexual abuse and physical violence against students under her supervision, including Plaintiffs, and failed to take appropriate protective action.

9. At all times relevant herein, Defendant DINA MEYER (hereinafter "Meyer") was employed as the Vice Principal and Assistant Principal of SES during the 2023-2024 and 2024-2025 school years. At all times relevant to this lawsuit, Meyer was acting under color of law and had supervisory authority over student discipline, safety, and welfare. Meyer received direct reports from parents regarding sexual abuse and physical violence against students under her supervision and failed to take appropriate protective action.

10. At all times relevant herein, Defendant GREGORY SEVERTS (hereinafter "Severts") was employed as a second-grade teacher at SES during the 2023-2024 school year. At all times relevant to this lawsuit, Severts was acting under color of law and had direct supervisory responsibility for I.W. and other students in his classroom. Severts received direct reports from parents regarding sexual abuse occurring in his classroom and failed to take appropriate protective action to safeguard his students.

11. At all times relevant herein, Defendant LORI CLARK (hereinafter "Clark") was employed as a counselor at SES during the 2023-2024 school year. At all times relevant to this lawsuit, Clark was acting under color of law and had direct supervisory responsibility for I.W. and other students at SES. Clark received direct reports regarding sexual abuse occurring in at SES and failed to take appropriate protective action to safeguard the students.

12. The true names, capacities, and identities of Defendants Does I through X are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe and therefore allege that each of Defendants Does I through X are responsible in some manner for the events and happening referred to herein and actually, proximately, and/or legally caused injuries and damages to Plaintiffs as alleged herein. Plaintiffs

will seek leave of Court to amend this Complaint, to insert the true names and capacities of Does I through X, when they become known and to join such Defendants in this action.

13. The true names, capacities, and identities of Defendants Roe Business Entities XI through XX, are unknown to Plaintiffs at this time, who may be corporations, associations, partnerships, subsidiaries, holding companies, owners, predecessors-in-interest or successors-in-interest entities, joint venturers, parent corporations or other related business entities of Defendants, and/or serving as alter ego of, any and/or all Defendants, who were acting on behalf of or in concert with, or at the direction of Defendants, and/or are entities responsible for the supervision of the individually named Defendants, and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities, and may be responsible for the injurious activities of the other Defendants. Plaintiffs allege that each named Doe and Roe Business Entity Defendant negligently, willfully, intentionally, recklessly, vicariously, or otherwise, caused, directed, allowed or set in motion the injurious events set forth herein. Each named Doe and Roe Business Entity Defendant is legally responsible for the events and happening alleged in this Complaint, and therefore, actually, proximately, and/or legally caused injuries and damages to Plaintiffs. Plaintiffs will seek leave of Court to amend this Complaint, to insert the true names and capacities of the Roe Business Entities XI through XX, when they become known and to join such Defendants in this action.

14. At all times relevant herein, Defendants, and each of them, were agents, servants, partners, and employees of each and every other Defendant and/or Doe and Roe Entities Defendants and were acting within the course and scope of their agency, partnership, or employment.

15. This Court has original jurisdiction over Plaintiffs' claims for relief pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events or omissions giving rise to Plaintiffs' claims occurred in Clark County, Nevada.

17. This case arose in Clark County, Nevada and pursuant to LR IA 1-8 of the Local Rules of Practice for the United States District Court, District of Nevada, this case should be

assigned to the Southern Division of the United States District Court, District of Nevada.

## GENERAL ALLEGATIONS

### A.   CCSD's Deliberate Indifference Allows A.C. to Sexually Assault I.W. Over 15 Times.

18.   In September 2023, I.W. was a seven-year-old second-grade student attending SES in Clark County, Nevada. I.W. was enrolled in Mr. Gregory Severts' second-grade classroom and was transported to and from school by CCSD via school bus. At all times relevant hereto, I.W. was under the care, custody, and supervision of CCSD during school hours and while being transported on CCSD buses.

19.   In September 2023, L.W. was a eight-year-old third-grade student attending SES. L.W. is I.W.'s and C.W.'s older sister and was under the care, custody, and supervision of CCSD during school hours and while participating in school-sponsored activities, including the school's cheer team.

20.   In September 2024, C.W. was a five-year-old kindergarten student attending SES. C.W. is I.W.'s younger sister and was enrolled in Mrs. Rios' kindergarten classroom. At all times relevant hereto, C.W. was under the care, custody, and supervision of CCSD during school hours.

21.   At all times relevant hereto, A.C. was a second-grade student in Mr. Severts' classroom alongside I.W. A.C. was approximately seven to eight years old and was under the supervision and control of CCSD and its employees during school hours.

22.   Beginning in September/October 2023 and continuing through May 2024, A.C. repeatedly sexually assaulted I.W. on school grounds during school hours. These sexual assaults occurred more than fifteen (15) times over an eight-month period while I.W. and A.C. were supposed to be under the direct supervision and care of CCSD.

23.   The sexual assaults perpetrated by A.C. against I.W. occurred in multiple locations on school property, including Mr. Severts' classroom and the school lunchroom.

24.   I.W. was not the only victim of A.C.'s sexual abuse. At least three other female students in second-grade were also sexually abused by A.C. during the same time period.

25.   In or around March 2024, R.T., the mother of one of the other survivors, reported to

Mr. Severts that A.C. had attempted to sexually abuse her daughter. Specifically, she reported that A.C. had told her daughter that he would return a paper she needed if she let him touch her genital area.

26. On or around March 28, 2024, school counselor Lori Clark called R.T. to discuss the incident involving A.C. and R.T.'s daughter. During this conversation, Ms. Clark confirmed that A.C. had admitted to the inappropriate conduct with R.T.'s daughter to school officials.

27. Despite receiving this direct report of sexual abuse by A.C. in March 2024, and despite A.C.'s admission, CCSD administrators and staff took no protective action whatsoever to prevent A.C. from continuing to sexually abuse female students, including I.W.

28. In April 2024, additional parents of female students reported to Principal Kristy Muffoletto, Vice Principal Dina Meyer, Mr. Severts, and Mrs. Clark, that A.C. was sexually abusing their daughters. These reports provided CCSD with further knowledge that A.C. posed a continuing sexual threat to female students in his class.

29. On or about April 26, 2024, I.W. disclosed to her mother, J.W., that A.C. had been touching her private parts and that this abuse had been occurring multiple times a week. J.W. immediately reported the incident through the SafeVoice reporting system.

30. On or about April 26, 2024, E.S., the mother of another survivor, also reported that her daughter had been sexually abused by A.C. Multiple parents, including J.W., E.S., and G.V., appeared at the school demanding immediate action to protect their daughters.

31. During a meeting at the school on or about April 29, 2024, CCSD administrators, including Principal Muffoletto and Vice Principal Meyer, interviewed each family separately. During these interviews, I.W. was forced to describe in detail the sexual abuse she had endured, causing her additional trauma and distress.

32. Following these interviews, CCSD's only response was to have I.W., A.C., and the other victims sign "No Contact Contracts" and to implement "Individualized Student Safety Plans." These measures were wholly inadequate to protect I.W. and the other victims from continued abuse.

33. Despite receiving multiple reports of sexual abuse and despite A.C.'s own admissions, CCSD administrators merely moved him to a different classroom, but otherwise

continued to allow AC access to potential victims.

34. CCSD's deliberate indifference allowed A.C. to continue sexually abusing I.W. for two additional months, from April 2024 through May 2024, until A.C.'s family moved out of state.

35. The sexual abuse inflicted upon I.W. by A.C. which was caused by CCSD's negligence and deliberate indifference, has caused I.W. severe and lasting psychological trauma. I.W. now suffers from Post-Traumatic Stress Disorder, severe anxiety that manifests in full-body hives, fear of attending school, and an inability to fully process her trauma even with intensive therapy.

### B. CCSD's Failures Allow C.W. to be Physically Assaulted by a Student Known to Have Dangerous Propensities

36. On December 16, 2024, C.W. was violently assaulted by her kindergarten classmate, Z.K., while both were supposed to be under the supervision of CCSD staff. During this assault, Z.K. threw his chair across the classroom, approached C.W., and violently threw her backpack before punching C.W. in the back of the head.

37. On information and belief, prior to assaulting C.W., Z.K. had demonstrated a documented pattern of violent behavior that was known to CCSD administrators and staff. Z.K. had been transferred from another CCSD school due to aggressive behavior and had subsequently been transferred between kindergarten classrooms at SES due to continued aggressive conduct.

38. Despite CCSD's knowledge of Z.K.'s history of violence and dangerous propensities, the school failed to implement adequate safeguards to protect C.W. and other students from his violent behavior.

39. The assault on C.W. was severe enough to require immediate medical attention from the school nurse. Shockingly, CCSD administrators instructed the school nurse not to inform C.W.'s parents about the assault. The nurse contacted J.W and S.W. anyway due to the severity of the incident and her independent concern for C.W.'s welfare.

40. As a result of this assault and CCSD's failure to protect her, C.W. now experiences intense anxiety about attending school. C.W. requires professional trauma therapy to address the emotional distress caused by this assault.

**C.  L.W. is Persistently Bullied by Both Students and Staff Members.**

41. L.W. endured persistent bullying and harassment from another student, A.J., while under CCSD's supervision, beginning in 2021. Despite multiple written communications from J.W. to L.W.'s teachers specifically requesting separation from A.J., including prior to the 2023-2024 year, and multiple reports to school administration regarding the harassment, CCSD failed to take meaningful action.

42. The bullying of L.W. by A.J. escalated from verbal harassment to physical violence, culminating in a Spring 2024 incident where A.J. physically assaulted L.W. on the school bus while both were supposed to be under CCSD's supervision.

43. CSCD's systematic failure to address bullying created an environment where L.W., like her sisters, attended school in fear. CCSD's continued inaction effectively communicated to its student body and staff that bullying, harassment, and assault carry no consequences.

44. At all times relevant to this lawsuit, CCSD was aware of the pervasive nature of sexual abuse, physical violence, and harassment occurring in its schools, yet despite knowing this, CCSD deliberately failed to address these risks and protect its students.

45. CCSD acted with deliberate indifference to the constitutional rights of its students when it permitted known a dangerous student to continue to have effectively undiminished access to victims after receiving credible reports of sexual abuse, physical violence, and harassment.

46. CCSD acted with deliberate indifference to the constitutional rights of its students by failing to appropriately respond to multiple complaints of misconduct, by failing to implement adequate protective measures, by failing to properly supervise dangerous students, and by failing to appropriately train its employees to recognize and respond to signs of abuse and harassment.

47. CCSD's policies and customs created an environment where sexual predation, physical violence, and harassment could flourish unchecked, leaving vulnerable elementary school children to suffer repeated abuse that will impact them for years to come.

48. As a direct and proximate result of CCSD's deliberate indifference and the abuse suffered while under CCSD's care, I.W., C.W., and L.W. have suffered severe physical, emotional, and psychological injuries that will require ongoing treatment and will impact them for the rest of

their lives.

49. The trauma inflicted upon these children has extended beyond the individual victims to create a family-wide crisis.

**FIRST CAUSE OF ACTION**

**(NEGLIGENCE)**

**(I.W., C.W., and L.W. – Against Defendants)**

50. Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

51. At all times relevant hereto, Defendant CCSD had a general duty to exercise reasonable care in its interactions with Plaintiffs I.W., C.W., and L.W.

52. Moreover, a special relationship existed between Defendant CCSD and Plaintiffs I.W., C.W., and L.W., which arose from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel. Accordingly, Defendant CCSD owed heightened duties, including a duty to exercise reasonable care to supervise and protect students, such as I.W., C.W., and L.W. from harm, while under CCSD's custody, care and control.

53. Defendant CCSD breached this duty of care when it implemented or failed to implement policies, procedures, customs, and practices, which resulted in I.W. being repeatedly sexually abused by A.C., C.W. being physically assaulted by Z.K., and L.W. being subjected to persistent bullying and harassment by A.J. Defendant CCSD's conduct which constitutes a breach of its duty of care includes, but is not limited to:

a. failure to train CCSD personnel, including teachers, administrators, and staff, to identify and investigate signs of sexual abuse, physical violence, and harassment;

b. failure to create policies and procedures that create and preserve a safe environment for children, including I.W., C.W., and L.W., in order to avoid and protect against sexual exploitation, physical abuse, harassment, and other physical or mental injury to children under CCSD's care and custody;

c. failure to ensure CCSD compliance with its own policies, and State and Federal law relative to maintaining student safety and preserving the Plaintiffs' rights;

      d. failure to implement or maintain procedures to sufficiently screen students with known dangerous propensities and to regularly evaluate and monitor such students after initial reports of misconduct;

      e. failure to remove or otherwise discipline students, including but not limited to A.C. and Z.K., against whom credible allegations of sexual abuse and physical violence were previously lodged;

      f. deliberate indifference to complaints lodged by students and their parents regarding inappropriate student conduct and dangerous behaviors, including specific reports about A.C.'s sexual abuse of multiple female students;

      g. failure to develop and implement appropriate policies to proactively monitor classrooms and common areas where vulnerable students interact with known dangerous students;

      h. failure to adequately supervise A.C., despite having knowledge of his dangerous propensities and multiple credible reports of sexual abuse, by continuing to allow him unsupervised access to vulnerable female students in classroom and lunchroom settings;

      i. failure to implement adequate protective measures for students who had reported abuse, including failing to physically separate known perpetrators from their victims;

      j. failure to properly investigate and respond to reports of Z.K.'s history of violent behavior, including his transfers between schools and classrooms due to aggressive conduct;

      k. failure to implement adequate supervision and safety protocols to protect kindergarten students like C.W. from known violent students like Z.K.;

      l. deliberate indifference to reports of persistent bullying and harassment of L.W. by A.J., despite multiple written communications from J.W. requesting intervention; and

      m. failure to implement and enforce anti-bullying policies and procedures as required by Nevada Revised Statutes, including NRS 388.122, NRS 388.132, and NRS 388.1321.

      54.    A.C.'s sexual abuse of I.W. was foreseeable. CCSD had actual knowledge of A.C.'s dangerous propensities through direct parental reports and A.C.'s own admissions that he had previously sexually abused multiple female students. Despite this knowledge, CCSD failed to implement adequate supervision or protective measures, failed to properly train staff to respond to

reports of sexual abuse, and failed to properly investigate or address complaints about A.C.'s conduct. As a direct and proximate result of these failures, while under CCSD's custody, care, and control, A.C. sexually abused I.W. on more than fifteen occasions over an eight-month period.

55. Z.K.'s assault on C.W. was foreseeable. On information and belief, Z.K. had a documented history of violent behavior resulting in transfers between schools and classrooms, and CCSD administrators were aware of his dangerous propensities. Despite this knowledge, CCSD failed to implement adequate supervision and protective measures in C.W.'s kindergarten classroom and failed to properly address complaints about violent students. As a direct and proximate result of these failures, while under CCSD's custody, care, and control, Z.K. physically assaulted C.W. by punching her in the back of the head.

56. The continued bullying and harassment of L.W., culminating in a physical assault by A.J. on the school bus, was foreseeable. J.W. made multiple written and verbal reports to school administrators and teachers about A.J.'s persistent bullying of L.W. Despite these reports, CCSD failed to implement adequate anti-bullying measures required under Nevada law, and demonstrated a pattern of indifference to student harassment. As a direct and proximate result of these failures, while under CCSD's custody, care, and control, L.W. continued to suffer bullying and harassment, culminating in a physical assault by A.J. on the school bus.

57. Defendant CCSDss conduct was the actual and proximate cause of I.W., C.W., and L.W.'s injuries.

58. As a result of Defendant CCSD's conduct, Plaintiffs I.W., C.W., and L.W. suffered damages in the form of extreme physical and/or emotional distress, shame, mental anxiety, humiliation, grief, sorrow, Post-Traumatic Stress Disorder, severe anxiety, need for ongoing trauma therapy, and other psychological and physical injuries.

**SECOND CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress)**

**(I.W., C.W., and L.W. – Against Defendants)**

59. Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

60. Defendants CCSD, Jara, Muffoletto, Meyer, and Severts repeatedly disregarded the known or obvious risk of sexual abuse that A.C. posed to I.W. and other children by, for example, failing to respond to complaints that A.C. was engaging in sexual abuse behaviors with young female students, failing to follow up on multiple complaints from parents concerning A.C.'s sexual abuse of their daughters (including with respect to I.W. specifically), and continuing to allow A.C. effectively undiminished access to vulnerable female students after he was credibly accused of sexually abusing multiple girls and had admitted to such conduct.

61. Defendants CCSD, Jara, Muffoletto, Meyer, and Severts' failure to protect vulnerable students like I.W. from A.C., whom Defendants knew posed a danger to children, is also extreme and outrageous and amounts to a reckless disregard for causing emotional distress to I.W.

62. Defendants CCSD, Jara, Muffoletto, and Meyer's, failure to protect C.W. from Z.K., despite knowing of his documented history of violent behavior and previous transfers due to aggressive conduct, and their instruction to the school nurse not to inform C.W.'s parents of the assault, constitutes extreme and outrageous conduct that amounts to a reckless disregard for causing emotional distress to C.W.

63. Defendants CCSD, Jara, and Muffoletto's failure to address the persistent bullying and harassment of L.W. by A.J., despite multiple written communications from J.W. requesting intervention, constitutes extreme and outrageous conduct that amounts to a reckless disregard for causing emotional distress to L.W.

64. Defendants intended to cause, or acted with a reckless disregard for causing, emotional distress to I.W., C.W., and L.W.

65. The conduct of the Defendants, as described herein constitutes extreme and outrageous conduct which falls outside all possible bounds of decency and which is utterly intolerable in a civilized community.

66. As a direct and proximate result of the actions of the Defendants, and each of them, as alleged herein, I.W. suffered extreme mental, physical, and emotional harm, anxiety, humiliation, grief, and sorrow, including Post-Traumatic Stress Disorder, severe anxiety manifesting in full-body hives, fear of attending school, and the need for ongoing trauma therapy.

67. As a direct and proximate result of the actions of the Defendants, and each of them, as alleged herein, C.W. suffered extreme mental, physical, and emotional harm, anxiety, including intense anxiety about attending school and the need for professional trauma therapy.

68. As a direct and proximate result of the actions of the Defendants, and each of them, as alleged herein, L.W. suffered extreme mental, physical, and emotional harm.

**THIRD CAUSE OF ACTION**

**(Vicarious Liability)**

**(I.W., C.W., and L.W. – Against Defendants)**

69. Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

70. Employers are vicariously liable for the torts committed by their employees, servants, and agents if the tort occurs while the employee, servant, or agent was acting in the course and scope of his or her employment.

71. At all times relevant hereto, CCSD was the employer of Defendants Jara, Muffoletto, Meyer, Clark, and Severts who failed to exercise reasonable care to supervise and protect students, such as I.W., C.W., and L.W. from harm, while under the Defendants' custody, care and control.

72. As a direct and proximate result of the actions of Jara, Clark, Muffoletto, Meyer, and Severts, I.W., C.W., and L.W. suffered extreme mental, emotional, and/or physical harm, mental anxiety, and emotional distress.

73. CCSD is vicariously liable for the torts committed by Jara, Clark, Muffoletto, Meyer, and Severts, to the extent that they were acting in the course and scope of their employment when said tortious conduct occurred.

74. As a direct and proximate result of the actions of the Defendants, and each of them, as alleged herein, Plaintiffs suffered extreme mental, physical, and emotional harm.

/ / /

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

### (Violation of Civil Rights – 42 U.S.C. § 1983)

### (I.W. Against Individual Defendants and Does I through X)

75. Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

76. At all times relevant herein, Defendant Jara was the Superintendent of CCSD and had final policymaking authority over district operations, personnel, student safety protocols, and response to reports of student-on-student misconduct. At all times relevant herein, Defendants Muffoletto and Meyer were school administrators at SES with supervisory authority over school operations, staff supervision, student discipline, safety, and implementation of district policies at the school level. At all times relevant herein, Defendants Severts and Clark were teachers and staff at SES with direct supervisory responsibility over students including I.W. All such Defendants were acting under color of state law at all times relevant to this Complaint. Jara, Muffoletto, Meyer, Severts, Clark, and Does I through X are hereinafter referred to as the Individual Defendants.

77. The Individual Defendants had actual knowledge that: (a) A.C. had been credibly accused by multiple parents of sexually abusing their daughters, including specific complaints made directly to Defendants Muffoletto, Meyer, Severts, and Clark; (b) A.C. had admitted to school counselor Clark in March 2024 that he had engaged in inappropriate touching of female students; (c) At least three other female students in addition to I.W. were victims of A.C.'s sexual abuse during the same time period; (d) Multiple written and verbal reports were made to school administrators regarding A.C.'s dangerous propensities and sexual misconduct toward female students; and (e) A pattern of student-on-student sexual abuse existed at SES requiring enhanced protective measures, proper investigation, and disciplinary action.

78. The Individual Defendants, despite this knowledge, failed to: (a) Suspend or expel A.C. despite receiving multiple credible reports of sexual abuse and A.C.'s own admission of guilt; (b) Implement adequate supervision protocols to protect I.W. and other female students from A.C.; (c) Properly investigate the multiple complaints of sexual abuse against A.C.; (d) Take corrective action to address A.C.'s dangerous propensities despite actual knowledge of his pattern of abuse;

(e) Separate A.C. from his victims and potential victims; (f) Implement and enforce adequate safety plans; (g) Train staff to recognize and respond appropriately to reports of student-on-student sexual abuse; and (h) Establish or implement procedures for responding to credible reports of repeated sexual abuse.

79. The deliberate failures of the Individual Defendants, despite their actual knowledge of substantial risk to I.W. and other female students, constitute deliberate indifference to I.W.'s constitutional rights under the Fourteenth Amendment.

80. The deliberate indifference of the Individual Defendants was a proximate cause of I.W.'s injuries. I.W. would not have suffered repeated sexual abuse by A.C. if the Individual Defendants had taken appropriate protective action, including suspending or expelling A.C., after receiving multiple credible reports and A.C.'s own admission of sexual misconduct.

81. The Individual Defendants are each liable in their individual capacities for damages resulting from their deliberate indifference to I.W.'s constitutional rights.

82. As a direct and proximate result of Defendants' conduct, I.W. has suffered extreme physical, mental, and emotional distress, and harm. Further, Defendants' conduct deprived I.W. of her constitutional right to bodily integrity and freedom from unjustified physical intrusions under the due process clause of the Fourteenth Amendment to the United States Constitution.

83. I.W., through her guardians, has been forced to retain the services of legal counsel to prosecute these claims, and therefore, is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**FIFTH CAUSE OF ACTION**

**(Violation of Civil Rights – 42 U.S.C. § 1983)**

**(I.W. Against CCSD and Roe Business Entities XI through XX)**

84. Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

85. I.W. had and has a constitutional right to bodily integrity and freedom from unjustified physical intrusions under the due process clause of the Fourteenth Amendment to the United States Constitution.

86. A special relationship existed between each of the Defendants and I.W., which arose from the mandatory character of school attendance and the comprehensive control exercised by school personnel over students. Accordingly, Defendants had a duty to exercise reasonable care to supervise and implement practices to protect students, such as I.W. from harm, while under the Defendants' custody, care and control.

87. Defendants CCSD and Roe Business Entities XI through XX, through their actions and inactions, violated I.W.'s rights under the Fourteenth Amendment to the United States Constitution.

88. Defendants are liable under 42 U.S.C. § 1983 because its official policies, unofficial policies, customs, and practices were the moving force behind the violation of I.W.'s constitutional rights.

89. Based on the duties charged to Defendants and their employees, including the duty to protect children under their supervision, Defendants knew or should have known of the need to establish policies, customs, and/or practices required to protect the civil rights of children with whom their agents regularly came into contact. This includes the need to adequately train its staff members.

90. Defendants' tolerance of a practice of inadequate supervision, training of its employees, and failure to supervise and discipline its employees reflects the Defendants' deliberate indifference to the foreseeable effects and consequences of its customs, practices, and policies with respect to the constitutional rights of minor students such as I.W. and others similarly situated.

91. Defendants' failures in their policies, or lack thereof, is evidenced by Defendants' pattern of inaction following multiple incidents of student-on-student sexual abuse known to Defendants' policy makers and administration.

92. This pattern of deliberate inaction despite actual knowledge of ongoing harm constitutes an unofficial policy or custom.

93. Such policies, customs, and practices included, but are not limited to, implementing policies and practices that resulted in inadequate supervision of students during school hours, providing inadequate training to its staff concerning detecting and responding to sexual abuse

behaviors, and failing to respond to complaints and concerns surrounding A.C.'s conduct. These policies, customs, and practices amounted to a deliberate indifference to I.W.'s constitutional rights.

94. The risk of sexual abuse that A.C. posed to students like I.W. was known to Defendants CCSD, Jara, Muffoletto, Meyer, and Severts. For example, Defendants CCSD, Jara, Muffoletto, Meyer, and Severts knew or should have known that A.C. had previously engaged in inappropriate sexual behaviors with female classmates, that parents and guardians repeatedly complained that A.C. was sexually abusing their daughters, and that A.C. had admitted to school counselor Clark that he had engaged in inappropriate touching of female students.

95. Defendants CCSD, Jara, Muffoletto, Meyer, and Severts disregarded the known or obvious risk of sexual abuse that A.C. posed to I.W. and other children by, for example, failing to respond to warning signs that A.C. was engaging in sexual abuse behaviors with young female students, failing to follow up on multiple complaints from parents concerning A.C.'s sexual abuse of their daughters (including with respect to I.W. specifically) and continuing to allow A.C. to remain in the same classroom with vulnerable female students after he was credibly accused of sexually abusing multiple girls and had admitted to such conduct.

96. Defendants acted under color of law in committing the acts complained of herein.

97. The policies, customs, and practices implemented by and/or ignored by Defendants were the moving force behind the deprivation of I.W.'s constitutional rights.

98. As a direct and proximate result of Defendants' conduct, I.W. has suffered extreme physical, mental, and emotional distress, and harm. Further, Defendants' conduct deprived I.W. of her constitutional right to bodily integrity and freedom from unjustified physical intrusions under the due process clause of the Fourteenth Amendment to the United States Constitution.

99. I.W., through her guardians, has been forced to retain the services of legal counsel to prosecute these claims, and therefore, is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE** Plaintiffs pray for judgment against Defendants as follows:

1. General and compensatory damages in the amount to be determined at the trial;
2. For attorney fees and costs of suits incurred herein;

3. For pre and pre-judgment and post-judgment interest as permitted by law; and

4. For such other and further relief as the Court deems just and proper under the circumstances.

DATE: February 13, 2026

GREENBERG GROSS LLP

By _____
JEMMA E. DUNN
Nevada Bar No. 16229
KARSON D. BRIGHT
Nevada Bar No. 14837
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Tel. (702) 777-0888

Attorneys for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury in this action for any and all claims so triable.

DATE: February 13, 2026

GREENBERG GROSS LLP

By _____
JEMMA E. DUNN
Nevada Bar No. 16229
KARSON D. BRIGHT
Nevada Bar No. 14837
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Tel. (702) 777-0888

Attorneys for Plaintiffs